# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | |
|---|---|
| GAIL A. MARTIN,       ) | |
|                          ) | |
| **Plaintiff,**        ) | |
|                          ) | |
| **v.**                 ) | **CAUSE NO. 1:18-cv-00033-SLC** |
|                          ) | |
| **COMMISSIONER OF SOCIAL**   ) | |
| **SECURITY,** *sued as Nancy A. Berryhill,* ) | |
| *Acting Commissioner of Social Security,* ) | |
|                          ) | |
| **Defendant.**       ) | |

## OPINION AND ORDER

Plaintiff Gail A. Martin appeals to the district court from a final decision of the

Commissioner of Social Security (the "Commissioner") denying her application under the Social

Security Act (the "Act") for disability insurance benefits ("DIB").[1]  For the following reasons,

the Commissioner's decision will be AFFIRMED.

## I.  BACKGROUND

Martin applied for DIB in August 2011, alleging disability as of September 25, 2009.

(DE 8 Administrative Record ("AR") 214-18).  In October 2012, administrative law judge

Melinda W. Kirkpatrick ("ALJ Kirkpatrick") conducted a hearing.  (AR 32-116, 604-75).  On

November 27, 2012, ALJ Kirkpatrick rendered an unfavorable decision, which Martin appealed

to the district court.  (AR 14-25, 724-745); *see Martin v. Colvin*, No. 1:14-CV-00078-SLC, 2015

WL 3617834 (N.D. Ind. June 9, 2015).

In February 2014, Martin file a new application for DIB, alleging disability as of

November 2012.  (AR 938-39).  Martin was last insured for DIB purposes on December 31,

---

[1] All parties have consented to the Magistrate Judge.  (DE 13); *see* 28 U.S.C. § 636(c).

2014 (AR 519), and therefore, she must establish that she was disabled as of that date, *see*

*Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that with respect to a DIB

claim, a claimant must establish that she was disabled as of her date last insured in order to

recover DIB).  On June 9, 2015, the district court remanded Martin's case to the Commissioner

to reassess Martin's residual functional capacity ("RFC").  *Martin*, 2015 WL 3617834, at *7.  On

October 23, 2015, the Appeals Council vacated and remanded ALJ Kirkpatrick's decision,

combining Martin's initial application for DIB with her February 2014 application "for further

proceedings consistent with the order of the [district] court."  (AR 746-50).

On February 18, 2016, administrative law judge William Pierson ("ALJ Pierson") held a

hearing at which Martin, who was represented by counsel; Martin's boyfriend, Beecher Hines;

and vocational expert Richard Oestreich (the "VE") testified.  (AR 561-603).  On March 29,

2016, ALJ Pierson rendered an unfavorable decision, finding that Martin was not disabled.  (AR

514-53).  Martin requested that the Appeals Council review ALJ Pierson's decision, but the

Appeals Council denied her request, making ALJ Pierson's decision the final, appealable

decision of the Commissioner.  (AR 508-13).

On February 8, 2018, Martin filed the complaint in this action, seeking relief from the

Commissioner's final decision.  (DE 1).  In her appeal, Martin alleges that ALJ Pierson:  (1)

failed to adhere to the instructions of the district court's previous remand of Martin's case; (2)

inappropriately discredited the opinions of two state agency physicians in crafting the RFC; (3)

failed to provide adequate reasoning for rejecting an assessment by Jeremy Lewis LMFT; and (4)

did not account for her moderate limitations in maintaining concentration, persistence, or pace in

the RFC or the hypothetical to the VE.  (DE 16 at 7-25).

## II. ALJ PIERSON'S FINDINGS

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether Martin is disabled as defined by the Act, ALJ Pierson conducted the familiar five-step analytical process, which required him to consider the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id*. at 885-86.

At step one, ALJ Pierson found that Martin had not engaged in substantial gainful

---

[2] Before performing steps four and five, an ALJ must determine the claimant's RFC, or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(5).

activity from March 9, 2010, through her date last insured, December 31, 2014. (AR 520). At step two, ALJ Pierson found that Martin had the following severe impairments: generalized anxiety disorder/panic disorder, mood disorder/depression, and post-traumatic stress disorder. (AR 520-28).

At step three, ALJ Pierson concluded that Martin did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 528-31). Before proceeding to step four, ALJ Pierson assigned Martin the following RFC:

> [She] had the physical [RFC] to perform a full range of work at all exertional levels. [Martin] retained the mental [RFC] to perform simple, routine, and repetitive tasks that could be learned through short demonstration and/or over a period of up to thirty days. She could maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions. [Martin] was limited to a low-stress job defined as requiring only occasional decision making and only occasional changes in the work setting. She could tolerate predictable changes in the work environment and meet production requirements in an environment that allowed her to sustain a flexible and goal[-]oriented pace. As to social interactions, [Martin] was limited to superficial interactions with co-workers, supervisors, and the public, with superficial defined as occasional and casual contact not involving prolonged conversation with contact with supervisors still involving necessary instruction.

(AR 531). Based on this RFC, ALJ Pierson found at step four that Martin could not perform her past relevant work. (AR 542-43). ALJ Pierson considered the testimony of the VE and other evidence in the record and determined at step five that Martin could perform other jobs in the national economy that exist in significant numbers, and therefore, her application for DIB was denied. (AR 543-44).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether an ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if an ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id*. Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Id*. Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id*. (citing *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)).

## IV. ANALYSIS

### A. The Law of the Case Doctrine

Martin contends that ALJ Pierson violated "the law of the case doctrine" by failing to implement the district court's findings—that is, from Martin's first appeal of the Commissioner's decision—regarding the severity of Martin's limitations.

"The *law of the case doctrine* requires that 'once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case.'" *Middleton v. Berryhill*, No. 16 CV 11136, 2018 WL 4384566, at *6 (N.D. Ill. Sept. 14, 2018) (emphasis in original) (quoting *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991)). "The law of the case doctrine is equally applicable to judicial review of

administrative decisions." *Alesia v. Berryhill*, No. 16 CV 9806, 2018 WL 3920534, at *6 (N.D. Ill. Aug. 16, 2018) (citation omitted). "It requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). A court or administrative body involved in a later phase of a lawsuit may not re-open questions decided by a higher court or in an earlier phase of the lawsuit. *Larsen v. U.S. Navy*, 887 F. Supp. 2d 247, 251 (D.D.C. 2012) (citing *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C.Cir.1995)). "A ruling that evidence was insufficient to support some finding is the type of ruling that establishes the law of the case." *Wilder*, 153 F.3d at 803.

In Martin's previous case, ALJ Kirkpatrick found at step three that Martin had moderate limitations in maintaining concentration, persistence, or pace. (AR 21). The district court determined that ALJ Kirkpatrick failed to expressly account for these limitations in crafting the RFC and the hypothetical to the vocational expert. *See Martin*, 2015 WL 3617834, at *7. The district court rejected the Commissioner's assertion that ALJ Kirkpatrick accommodated Martin's moderate limitations by limiting her to only occasional social interactions. *Id*. Thus, the district court ordered a remand of the Commissioner's decision "for the purpose of reassessing Martin's RFC." *Id.* at *8.

The district court's holding, which became the law of the case, was that the assigned RFC and the hypothetical to the vocational expert were not supported by substantial evidence because they did not adequately take into account ALJ Kirkpatrick's conclusion that Martin had moderate deficits in maintaining concentration, persistence, or pace.

Martin argues that ALJ Pierson failed to adhere to the law of the case doctrine by departing from the district court's supposed finding that Martin is limited to performing light

work.  But the district court's holding establishes that it did not conclude that Martin is limited to light work.  In fact, the district court did not make any findings regarding Martin's limitations that constitute "law of the case."  At most, the district court affirmed ALJ Kirkpatrick's finding that Martin has moderate difficulties in maintaining concentration, persistence, or pace.  But even if such a finding did become "law of the case," ALJ Pierson still did not violate the law of the case doctrine because he found that Martin has moderate difficulties in maintaining concentration, persistence, or pace.  (*See* AR 528-31).  Therefore, ALJ Pierson's decision will not be remanded based on Martin's argument regarding the law of the case doctrine.

### B.  The RFC Assigned by Dr. Sands and Confirmed by Dr. Ruiz

The RFC is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week.  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *see Young v. Barnhart*, 362 F.3d 995, 1000-02 (7th Cir. 2004) (citations omitted); 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations.").  The RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence . . . ." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545.

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances."  *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2).  Each medical opinion, other than a treating physician's opinion, must be evaluated pursuant to factors articulated in 20 C.F.R. § 404.1527(c) to determine the proper weight to apply to it.  *See White v. Barnhart*, 415 F.3d 654, 658-60 (7th Cir. 2005).  One factor an ALJ may consider is the extent to which an opinion is supported by the record.  *Long v.*

*Comm'r Soc. Sec.*, No. 2:15-CV-408-JEM, 2017 WL 1161012, at *3 (N.D. Ind. Mar. 28, 2017) (quoting SSR 96-5p, 1996 WL 374183, at *3, 5). Finally, although an ALJ may decide to adopt the opinions in a medical source statement concerning the ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved to an ALJ. SSR 96-5p, 1996 WL 374183, at *4.

On October 10, 2011, state agency physician J. Sands, M.D., reviewed Martin's record. (AR 119-25). Dr. Sands relied on x-rays taken of Martin on October 3, 2011; Park Center records; submissions of Martin and her representative; the report of Revathi Bingi, Ph.D.; the functional report of Mr. Hines; state agency consultant David Ringel, D.O.'s report of September 21, 2011; reports from the Family Chiropractic Associates, PC; and reports from Parkview First Care. (AR 119-21). Dr. Sands concluded that Martin could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand or work with breaks for a total of about six hours in an eight-hour workday; sit with normal breaks for six hours in an eight-hour workday; climb ladders, ropes, or scaffolds occasionally; and perform other postural positions frequently. (AR 124-25). Dr. Sands opined that Martin had reduced range of motion in her cervical lumbar spine and mild cervical disc degeneration. (AR 125).

Dr. Sands assessed Martin with the following medically determinable impairments: discogenic and degenerative disorders of the back, anxiety disorders, drug and substance addiction disorders, and personality disorders. (AR 122). On October 26, 2011, M. Ruiz, M.D., another state agency physician, reviewed and affirmed Dr. Sands's report. (AR 460).

With respect to Martin's physical limitations in her neck or spine, Dr. Sands's and Dr. Ruiz's assessments relied on Dr. Ringel's report, the chiropractor's report, and x-rays. None of the other sources discussed limitations or symptoms concerning Martin's spine or neck.

Martin was treated by Family Chiropractic Associates in July 2011. (AR 440-42). She reported being unable to sit or stand over long periods of time, together with pain in her lower back and sides. (AR 442).

Dr. Ringel examined Martin in September 2011. (AR 443-45). Dr. Ringel assigned Martin a 20-pound weight-lifting restriction. (AR 443). With respect to functional limitations, Dr. Ringel opined that Martin could stand for 15 minutes at a time and two-and-a-half hours out of an eight-hour workday; walk a half block on level ground; sit for 20 minutes without difficulty; lift up to five pounds on a regular basis; and drive up to two hours at a time. (AR 443).

Dr. Ringel found that Martin's reflexes were 2/4 bilaterally. (AR 445). Her gait was "completely normal," and she did not need an assistive device. (AR 445). Her grip strength was 5/5 bilaterally. (AR 445). No abnormality was noted in either hand, though she did have a small ganglion cyst on the left dorsal wrist. (AR 445). She had pain at the right sacral iliac joint and some mild spasms bilaterally in the lumbar area. (AR 445). Shoulders, elbows, wrists, knees, and ankles had full range of motion. (AR 445). Straight leg raise tests were 40 degrees bilaterally, with normal 90 degrees bilaterally when seated. (AR 445).

Martin could lay straight back on the examination table and get on and off of it without assistance. (AR 445). Martin could walk on her heels and toes without difficulty but refused to squat due to back discomfort. (AR 445). Dr. Ringel assessed that Martin had decreased range of motion of her cervical and lumbar spinal segments and hips bilaterally. (AR 445). Martin "relate[d]" that compressed discs in her back caused "a permanent 20[-]pound weight[-]lifting restriction." (AR 445).

In October 2011, x-rays showed that Martin's hips and lumber spine were normal. (AR

457-58).  The reviewing physician noted "[m]inimal disc space narrowing seen at C5-C6 with minimal degenerative osteophytes."  (AR 458).

On March 27, 2014, state agency physician Joshua Eskonen, D.O., reviewed Martin's record.  (AR 713-22).  Dr. Eskonen determined that Martin had "[n]o physical impairments [as] alleged," and that her physical exam was "unremarkable."  (AR 716).  Dr. Eskonen noted that "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim."  (AR 715).

ALJ Pierson assigned "very little weight" to Dr. Sands's and Dr. Ruiz's reports.  (AR 527).  ALJ Pierson concluded that Dr. Sands and Dr. Ruiz based their opinions largely on Dr. Ringel's notation that Martin "relates" symptoms and limitations of function.  (AR 527).  ALJ Pierson provided a number of other reasons why Dr. Ringel's report was entitled to little weight, which Martin does not contest.  (*See* AR 527).

On the other hand, ALJ Pierson found that the lack of evidentiary support for Martin's alleged physical impairments was consistent with the opinion of Dr. Eskonen.  (527-28).  ALJ Pierson stated that "it appears the possibility of physical limitations of function was considered by Dr. Eskonen but was also rejected.  Dr. Eskonen . . . considered the physical examination results and also considered the fact that the claimant did not allege physical limitations of function in the subsequent claim."  (AR 528).  Thus, ALJ Pierson assigned Dr. Eskonen's report "significant weight."  (AR 527).

First, Martin argues that ALJ Pierson inappropriately "played doctor" by determining that the x-rays did not support the reports of Dr. Sands and Dr. Ruiz.  (DE 16 at 14 (citing *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982))).  Dr. Sands's report merely stated "[x-rays]: normal hips and lumbar, mild cerv[ical] [discogenic and degenerative disorders]."  (AR 125).

While ALJ Pierson stated that diagnostic tests did not support the RFC assigned by Dr. Sands, he never mentioned or analyzed the x-rays or Dr. Sands's interpretation of the x-rays. (AR 526-27). Therefore, ALJ Pierson did not "comment[] on the meaning of a test or clinical x-ray" or otherwise "play doctor." *Whitney*, 695 F.2d at 788. Accordingly, Martin's argument lacks merit.

Second, Martin claims that ALJ Pierson erred in determining that Dr. Sands and Dr. Ruiz relied on Dr. Ringel's report in reaching their conclusions regarding Martin's physical limitations. Martin contends that neither Dr. Sands nor Dr. Ruiz "referenced . . . Martin's report of symptoms and limitations to Dr. Ringel." (DE 16 at 15). Martin is correct that Dr. Sands and Dr. Ruiz did not explicitly mention Dr. Ringel's report in their assessments, but as noted *supra*, Dr. Ringel's report was the only opinion from an acceptable medical source regarding Martin's physical limitations. Furthermore, Martin has not pointed to any evidence that ALJ Pierson failed to consider. Therefore, Martin's second argument also lacks merit.

Third, Martin contends that ALJ Pierson erred in reaching the following conclusion: Dr. Sands's opinion (confirmed by Dr. Ruiz) that Martin has severe physical impairments lacks credibility because Dr. Sands relied on Dr. Ringel's report but Dr. Ringel did not provide a diagnosis. Martin argues that Dr. Sands assessed discogenic and degenerative disorders of the back and that ALJ Pierson did not provide adequate reasoning for rejecting this finding. (AR 122). However, Martin misstates ALJ Pierson's conclusion: ALJ Pierson assigned greater weight to Dr. Eskonen's opinion—finding that Martin has no physical impairments—than to Dr. Sands's and Dr. Ruiz's opinions because Dr. Eskonen's opinion was more consistent with evidence of record. *See White*, 415 F.3d at 658-60 (citing 20 C.F.R. § 404.1527(c)); *Clifford*, 227 F.3d at 871 (explaining that medical evidence may be discounted if it is inconsistent with evidence of record). ALJ Pierson did not err in resolving the conflict between Dr. Eskonen's

report and Dr. Sands's and Dr. Ruiz's reports; rather, it was his job to do so. *See Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009); *Hampton v. Berryhill*, No. 2:17-CV-62-PRC, 2018 WL 1101985, at *6 (N.D. Ind. Mar. 1, 2018) ("[T]he more consistent an opinion is with the record as a whole, the more weight [is given] to that opinion." (second alteration in original) (citation and internal quotation marks omitted)). Therefore, Martin's third argument fails.

In Martin's fourth and fifth arguments, she asserts that ALJ Pierson erred in finding that she did not seek treatment "for her alleged neck and back pain," apart from Dr. Ringel's report and the chiropractic report. This argument is not supported by the record because ALJ Pierson reviewed several medical reports in which Martin did not exhibit or complain of back or neck pain. (AR 523-24). Martin merely argues that these medical reports are "not inconsistent" with her supposed physical limitations, but she fails to point out any evidence supporting her claim of disability that ALJ Pierson did not consider.[3] To that extent, Martin's arguments amount to a plea to reweigh the evidence—a task which the Court cannot do. *See Clifford*, 227 F.3d at 869 (recalling that courts "do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner" (citations omitted)).

Sixth, Martin claims ALJ Pierson erred in discounting Dr. Sands's and Dr. Ruiz's opinions because Martin worked after 2004. Martin claims that the RFC assigned by Dr. Sands and confirmed by Dr. Ruiz relates back to the alleged onset date of September 25, 2009, rendering it irrelevant that Martin worked after 2004 (she did not work after the alleged onset date). Martin argues that Dr. Sands indicated that his assessment of Martin's RFC was a

---

[3] Martin argues that ALJ Pierson mischaracterized the record when discussing Dr. Braun's treatment notes. ALJ Pierson stated that Dr. Braun noted Martin had a "supple and non-tender neck," but Dr. Braun's treatment notes do not contain this description. (*Compare* AR 382-87, *with* AR 523). Thus, ALJ Pierson erred in describing Dr. Braun's treatment notes. However, because this error is harmless, *see Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (citing *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996)), the Court will not order a remand to reconsider Dr. Braun's treatment notes.

"Current Assessment," which Martin argues means that the RFC relates back to the alleged onset date. (DE 16 at 17-18). Martin claims that the Social Security Administration provides that, in completing a physical RFC assessment form, the term "Current Evaluation" relates back to the alleged onset date to the present. (DE 16 at 17-18 (citing Social Security Administration, Program Operations Manual System (POMS) (last updated August 27, 2015) https://secure.ssa.gov/poms.nsf/lnx/0424510050)). Martin does not cite any cases in which a court has applied her interpretation of "Current Assessment." In any event, the Court does not need to reach this argument because even if Martin's interpretation of "Current Assessment" is correct, Martin's argument would still fail to show that ALJ Pierson committed error. Dr. Eskonen also gave a "Current Evaluation" of Martin's RFC, and ALJ Pierson articulated why Dr. Eskonen's opinion was entitled to more weight than the opinions of Dr. Sands and Dr. Ruiz. *See, e.g.*, *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016). Therefore, Martin's sixth argument fails.

In Martin's final argument, she claims ALJ Pierson erred in discrediting Dr. Sands's and Dr. Ruiz's reports because there was no evidence that Martin ceased working due to a physical impairment. In this argument, Martin claims that, in response to the hypothetical posed by ALJ Pierson, the VE did not state the exertional level of Martin's past work as she performed it. However, it is not clear how the VE's failure to identify the exertional level of Martin's past work as she performed it relates to the credibility of Dr. Sands's and Dr. Ruiz's assessments. In any event, ALJ Pierson found that Martin was not able to perform her past relevant work, and thus, any error in identifying the exertional level of her past work as performed was harmless. (*See* AR 542-43); *see Shramek*, 226 F.3d at 814 (explaining that harmless errors are those that do not ultimately impact the outcome of the determination (citation omitted)).

### C. Mr. Lewis's February 2016 Assessment

Martin also argues that ALJ Pierson improperly evaluated the assessment of her mental health counselor, Mr. Lewis, dated February 17, 2016.

Mr. Lewis saw Martin approximately 14 times between March 2014 and June 2015. (AR 1035, 1039, 1043-44, 1056, 1060-61, 1088-91, 1098-1101, 1110-11, 1118-21, 1125). Six months after her June 2015 appointment, that is, on January 13, 2016, Martin saw Mr. Lewis again. (AR 1067-68). Notably, Mr. Lewis never conducted a mental status exam; described Martin's affect, appearance, ability to communicate, or thought process; or assessed Martin's mood, concentration, or memory.

Then, in February 2016, Mr. Lewis completed an assessment of Martin's mental functioning. (1135-39). Mr. Lewis opined that Martin's mental symptoms would worsen if she returned to competitive work, causing her to be absent from work more than three days a month or to be tardy more than three times a week. (AR 1137). Mr. Lewis stated that Martin would stay on task for less than 70% of a workday. (AR 1138). Mr. Lewis estimated that Martin could function with others for a third of an eight-hour workday. (AR 1138).

In November 2013, Martin saw Mitchell Stucky, M.D., who assessed her as having rapid or pressured speech; an angry and blunt affect; but normal cognition and memory. (*E.g.*, AR 1117-22). Dr. Stucky examined Martin again in February 2015 and assessed mood and personality disorders, but he did not identify deficiencies in mental functioning. (AR 1065).

Martin also saw Susan Charow Sherman, M.D., several times in 2014 for mental health purposes. (AR 1023-31, 1036-38, 1040-42, 1045-52, 1122-24). In August 2014, Dr. Sherman noted that Martin's affect and mood were congruent; she was oriented as to person, place, time, and situation; and her recent, remote and immediate memory were intact. (AR 1123-24).

In March 2014, Martin began seeing Amy K. Scheeringa, MSN, APRN-CNS, PMH-BC. (AR 1058-59). Between November 2014 and December 2015, Ms. Scheeringa assessed Martin with post-traumatic stress disorder, bipolar disorder not otherwise specified, and alcohol abuse; and assigned a Global Assessment of Functioning ("GAF") scores of 55, 58, and 59[4] (the score of 59 being assigned in August 2015). (AR 1078-87, 1092-97, 1102-07, 1112-17). Ms. Scheeringa also performed several mental status exams (*e.g.*, AR 1085-87) noting congruent affect; appropriate behavior; logical, coherent, and goal directed thought process; normal thought content; no memory deficits; normal attention/concentration; and orientation to person, place, time, and situation (*e.g.*, AR 1072-73).

In March 2015, Ajay Gupta, M.D., conducted a neurological examination of Martin. (AR 1128-35). Dr. Gupta assessed that Martin did not have depression, panic or anxiety attacks, compulsion, suicide attempts, addictions, or hallucinations. (AR 1129). Regarding mental status, Dr. Gupta found that Martin was alert and oriented to person, place, and time; her cognition was intact; and she was pleasant and cooperative. (AR 1130).

ALJ Pierson provided several reasons why Mr. Lewis's February 2016 assessment was entitled to little weight: (1) he is not an acceptable medical source; (2) his treatment notes do not support the February 2016 assessment; (3) there was a six month gap in Martin's treatment with Mr. Lewis leading up to the February 2016 assessment; (4) Mr. Lewis did not cite objective tests

---

[4] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g.. few friends, conflicts with peers or co-workers). *Id.*

"The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). However, various medical providers of record used GAF scores in assessing Martin, so the GAF is relevant to the ALJ's decision. *See id.* (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

in support of the limitations in the February 2016 assessment; (5) Mr. Lewis completed the February 2016 assessment to help Martin obtain social security benefits; and (6) the February 2016 assessment was inconsistent with other medical evidence of record. (AR 534-38).

ALJ Pierson also found that records from Dr. Sherman, Ms. Scheeringa, and another psychiatrist failed to establish "significant functional limitations with respect to performing the mental demands of work." (AR 539-40). ALJ Pierson assigned significant weight to Ms. Scheeringa's treatment records because of her "longitudinal relationship with [Martin]," the consistency of her GAF scores with her records and Dr. Sherman's records. (AR 541).

Martin's first argument—that ALJ Pierson did not explain the relevance of the six-month gap in treatment—fails. An ALJ may consider the frequency and nature of treatment in evaluating the weight to lend to a source's opinion. *See Wyatt v. Astrue*, No. 1:11-CV-00874-MJD, 2012 WL 2358149, at *4 (S.D. Ind. June 20, 2012) (finding that the ALJ may consider "the treatment relationship including the length, nature, and extent of the relationship and the frequency of examinations" (citing 20 C.F.R. § 404.1527(c)); *see also Stevenson*, 105 F.3d at 1155 ("The ALJ was entitled to make reasonable inferences from the evidence before him . . ." (citation omitted)).

Here, while ALJ Pierson did not specifically state that the gap in treatment indicates that Mr. Lewis lacked the necessary familiarity with Martin's condition to render the opinions in the February 2016 assessment, such an explanation was not necessary. "The ALJ's explanation should be given a 'commonsensical reading' and should not be needlessly or pedantically nitpicked." *Busking v. Colvin*, No. 11 C 1598, 2013 WL 4401380, at *18 (N.D. Ill. Aug. 14, 2013) (quoting *Shramek*, 226 F.3d at 811). ALJ Pierson sufficiently connected the evidence to his conclusion on this point. *See, e.g.*, *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988)

(finding that an ALJ must articulate his analysis "at least at a minimum level" (citation omitted)). Furthermore, Martin does not offer an alternative explanation for the six-month gap in treatment. *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  Therefore, Martin's first argument fails.

Second, Martin takes issue with ALJ Pierson's conclusion that Mr. Lewis did not provide support for his conclusions that Martin would be absent from work or unable to stay on task.  An ALJ may assign greater weight to the opinion of a source who is not an acceptable medical source, if the opinion "provide[s] better supporting evidence and a better explanation for the opinion . . . ."  20 C.F.R. § 404.1527(f)(1).  Here, ALJ Pierson correctly observed that the conclusions in Mr. Lewis's February 2016 assessment lacked clinical or diagnostic support.  For example, Mr. Lewis stated that he "would expect [Martin's] symptoms to worsen due to the intensity of anxiety she experiences in public situations," but he did not support his expectation with evidence.  (AR 1136).  Similarly, Mr. Lewis concluded that if Martin worked eight hours a day, five days a week, she would "likely . . . find the anxiety she experiences overwhelming," resulting in more than three absences per month.  (AR 1136).  But, again, Mr. Lewis did not explain what findings or supporting evidence made this outcome "likely."  Martin does not point to any supporting evidence that ALJ Pierson ignored.  Therefore, the Court will not disturb ALJ Pierson's conclusion that Mr. Lewis's February 2016 assessment lacked evidentiary support.

Third, Martin claims ALJ Pierson erred in determining that Mr. Lewis's treatment notes did not support his February 2016 assessment.  It is well established that an ALJ may "discount medical opinions based solely on the patient's subjective complaints."  *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (citing *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008)); *see also Diaz v. Chater* 55 F.3d 300, 308 (7th Cir. 1995).  ALJ Pierson found that Mr. Lewis's

treatment notes merely documented Martin's subjective complaints and "his efforts to help [Martin] see how her perception of others affected her social anxiety," deal with family conflict, and respond to grief. (AR 534). In fact, Martin concedes this point because in listing the symptoms that she argues ALJ Pierson should have interpreted as signs, Martin states that she "reported" each one. (*See* DE 16 at 19-20). Conversely, ALJ Pierson determined that the February 2016 assessment provided opinions about Martin's condition "outside the realm of subjective complaints." (AR 534-35). Thus, ALJ Pierson correctly determined that Mr. Lewis's treatment notes were entitled to little weight, *Filus*, 694 F.3d at 868, and consequently, ALJ Pierson did not err in deciding that Mr. Lewis's treatment notes did not support the February 2016 assessment.

Fourth, Martin contends that ALJ Pierson did not give good reasons for assigning little weight to certain aspects of Mr. Lewis's February 2016 assessment. The problem with Martin's argument is that ALJ Pierson found that *no evidence* of record supported limitations assigned in the February 2016 assessment, and therefore, ALJ Pierson provided sound reasons for discounting all the assigned limitations. Furthermore, ALJ Pierson did not reject Mr. Lewis's opinion; rather, he assigned the February 2016 assessment "little weight." (AR 539); *see Busking*, 2013 WL 4401380, at *19 ("[T]o begin with, contrary to the plaintiff's assertion, the ALJ did not reject the relevant portion of Dr. Jilhewar's testimony; instead, she merely gave it 'little weight.'"). The burden was on Martin to demonstrate that the February 2016 assessment was supported by evidence, *Scheck*, 357 F.3d at 702 (citing 20 C.F.R. § 404.1512(c); *Bowen*, 482 U.S. at 146 n.5), and she has failed to carry that burden.

Finally, Martin argues that ALJ Pierson should not have discounted the February 2016 assessment because it was obtained to receive benefits. This argument ignores that ALJ Pierson

was entitled to consider the nature of the treatment relationship in determining the weight to assign to it. 20 C.F.R. § 404.1527(f)(1). The fact that Martin saw Mr. Lewis in February 2016 to obtain social security benefits was just one factor in ALJ Pierson's analysis that "call[ed] into question [the] reliability of [Mr. Lewis's] assessment." (AR 538). Martin has failed to persuade the Court that ALJ Pierson erred in assigning little weight to the February 2016 assessment, and therefore, ALJ Pierson's conclusion on this issue will not be disturbed.

### D. The Hypothetical to the VE

In her last argument, Martin asserts that ALJ Pierson failed to incorporate findings of a moderate degree of limitations in concentration, persistence, or pace into her RFC or the hypothetical to the VE.

At steps two and three of the sequential evaluation, an ALJ determines the severity of a claimant's mental impairment by assessing her degree of functional limitation in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Relevant to this appeal, the "paragraph B" criteria consist of four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001).

ALJ Pierson assessed the paragraph B criteria at step three, and concluded that Martin had "moderate difficulties" in maintaining concentration, persistence, or pace; moderate difficulties with social functioning; and mild limitations in her ability to engage in daily activities. (AR 529-30). ALJ Pierson emphasized that the paragraph B assessment did not constitute an RFC determination, and stated that he would give a more detailed account of

Martin's mental limitations in the RFC.  In turn, ALJ Pierson assigned the following mental limitations in Martin's RFC:

> She retained the mental [RFC] to perform simple, routine, and repetitive tasks that could be learned through short demonstration and/or over a period of up to thirty days.  [Martin] could maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions.  [Martin] was limited to a low-stress job defined as requiring only occasional decision making and only occasional changes in the work setting.  She could tolerate predictable changes in the work environment and meet production requirements in an environment that allowed her to sustain a flexible and goal[-]oriented pace.  As to social interactions, [Martin] was limited to superficial interactions with co-workers, supervisors, and the public, with superficial defined as occasional and casual contact not involving prolonged conversation with contact with supervisors still involving necessary instruction.

(AR 531).  ALJ Pierson's hypothetical to the VE included the following relevant exchange:

> Q.  Please assume a hypothetical individual.  This is Hypothetical One.  The hypothetical individual [is] without limitations of exertion.  However, the individual is limited to work that involves simple, routine and repetitive tasks that can be learned through short demonstration [in] up to 30 days.
>
> The individual can maintain the concentration required to perform simple tasks.  The individual can remember simple work[-]like procedures.  The individual can make simple work-related decisions.
>
> The individual is limited to work in a low stress job defined as requiring only occasional decision making, only occasional changes in the work setting.  The individual can tolerate predictable changes in the work environment.
>
> The individual can meet production requirements in an environment that would allow him or her to sustain goal[-]oriented pace.  The individual is limited to superficial interaction with coworkers, supervisors, and the public with superficial interaction defined as occasional and casual contact not involving prolonged conversations.
>
> However, contact with supervisors would still involve necessary instruction.  Could such an individual perform any of the claimant's past work?
>
> A.  No, your honor.  It's all semi-skilled.  Your profile is lower

> than semi-skilled.
>
> Q. Would there be other work activity, other representative occupation such a person could perform?
>
> A. Yes, your honor. I'll give you several light [exertional] examples.

(AR 599-602). Martin asserts that the hypothetical to the VE failed to incorporate her moderate difficulties in maintaining concentration, persistence, or pace that ALJ Pierson discussed at step three because the hypothetical limited Martin to "simple, repetitive tasks" or "unskilled work."

The Seventh Circuit has instructed that "for most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). This is because, in most cases, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id*. at 620 (finding that a restriction to repetitive tasks with simple instructions did not necessarily account for the claimant's depression-related problems in concentration, persistence, and pace (collecting cases)); *see also Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014) (finding that a limitation to "simple, repetitive tasks" did not adequately account for the claimant's concentration problems arising from depression and borderline intellectual functioning); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (concluding that a limitation to unskilled work did not sufficiently account for the claimant's concentration problems stemming from depression and a psychotic disorder). Having said that, the Seventh Circuit has not insisted "on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the

hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619.

"Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985). Accordingly, the RFC and hypotheticals "must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren*, 565 F. App'x at 544 (emphasis added) (citations omitted); *see Yurt*, 758 F.3d at 858 (articulating that an RFC for unskilled work "by itself does not provide any information about [the claimant's] mental condition or abilities").

In addressing complexity in the hypothetical to the VE, ALJ Pierson stated that Martin could perform work "that can be learned through short demonstration [in] up to 30 days," requiring her to recall "simple work[-]like procedures" and make "simple work-related decisions." (AR 600). This characterization of Martin's ability is consistent with the RFC. (*See* AR 531 (limiting Martin to "tasks that could be learned through short demonstration and/or over a period of up to thirty days," and "simple work-like procedures, and . . . simple work-related decisions")). In relating Martin's ability to stick with a task in the hypothetical to the VE, ALJ Pierson stated that Martin "could maintain the concentration" to "perform simple tasks," and that she "can meet production requirements in an environment that would allow him or her to sustain goal[-]oriented pace." (AR 600). This limitation is reflected in the RFC: Martin could perform "simple tasks," and "remember simple work-like procedures" in an environment that allows her "sustain a flexible and goal[-]oriented pace." (AR 531).

Therefore, ALJ Pierson did not violate the Seventh Circuit's instruction in *O'Connor-*

*Spinner* to address both the complexity of the tasks the claimant can perform and the claimant's ability to stick with the tasks over a sustained period. 627 F.3d at 620. ALJ Pierson supported his determination of Martin's ability to maintain concentration, persistence, or pace with the opinions of Dr. Eskonen, Dr. Bingi, Ms. Scheeringa, and Dr. Sherman. (AR 447, 716-22, 1023-31, 1036-38, 1040-42, 1045-52, 1058-59, 1078-87, 1092-97, 1102-07, 1112-24). Thus, Martin's argument that ALJ Pierson did not account for her limitations in the hypothetical to the VE or in the RFC lacks merit.

In conclusion, contrary to Martin's assertions, the Court need not order a remand based on ALJ Pierson's account of Martin's mental limitations in the RFC and in the hypotheticals posed to the VE at step five. *See O'Connor-Spinner*, 627 F.3d at 620-21.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Martin.

SO ORDERED.

Entered this 22nd day of March 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge